UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __22-20290-CR-BLOOM(s)__
18 U.S.C. § 1343
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)

FILED BY ___TS___ D.C.
Aug 23, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

vs.

ERIC DEAN SHEPPARD,

    Defendant.
_____/

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Superseding Indictment:

**The Small Business Administration, the COVID-19 Emergency, and the CARES Act**

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on March 27, 2020, to provide emergency financial assistance to Americans suffering economic harms from the COVID-19 pandemic. To achieve this goal, the CARES Act established new temporary programs and expanded existing programs administered by the United States Small Business Administration ("SBA").

**The Paycheck Protection Program**

2. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

3. Businesses could apply for PPP loans by submitting a PPP loan application (SBA Form 2483). The PPP loan application required that these businesses acknowledge, through authorized representatives, the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, these businesses, through authorized representatives, had to state their: (a) average monthly payroll expenses, and (b) number of employees. Because independent contractors were able to apply for PPP loans on their own, employers' payroll calculations and number of employees were based on wages paid to W-2 employees, not payments to independent contractors. The employers' payroll expenses were used to calculate the amount of money the applicant businesses were eligible to receive under the PPP. In addition, these businesses had to provide documentation evidencing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the IRS.

4. A PPP loan application had to be processed by a participating lender or the participating lender's delegee. If a PPP loan application was approved, the lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the reports and documentation regarding the business's income and expenses, were transmitted by the lender to the SBA in the course of processing the loan.

5. PPP loan proceeds were required to be used by the business on certain permissible expenses— employee payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

2

**The Economic Injury Disaster Loan Program**

6.     The Economic Injury Disaster Loan ("EIDL") program was an SBA program that existed before the COVID-19 pandemic to provide low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

7.     The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In order to obtain a COVID-19 EIDL, a qualifying business was required to submit an EIDL application to the SBA and provide information about its operations, such as the number of employees and gross revenues and cost of goods sold for the 12-month period preceding January 31, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

8.     EIDL applications were submitted directly to the SBA, which processed the applications with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. The SBA issued any funds under an EIDL directly to the applicant.

**The Defendant and Relevant Entities**

9.     HM-UP Development Alafaya Trails, LLC ("Alafaya Trails") was a Florida limited liability company with its principal address in either Miami, Florida or Bal Harbour, Florida.

10.    HM Management and Development, LLC ("HMMD") was a Florida limited liability company with its principal address in either Miami, Florida or Bal Harbour, Florida.

11.    HM Four, LLC ("HM Four") was a Florida limited liability company with its principal address in either Miami, Florida or Bal Harbour, Florida.

3

12. Defendant, **ERIC DEAN SHEPPARD**, was a resident of Miami-Dade County. **SHEPPARD** was the Manager of Alafaya Trails, HMMD, and HM Four. **SHEPPARD** had access and control over the bank accounts of Alafaya Trails, HMMD, and HM Four at SunTrust Bank.

13. Bank Processor 1 was a third-party company processor, based in San Jose, California, that processed the PPP loan applications for Bank 1. Bank Processor 1 processed PPP loan applications at its offices in Wilmington, Delaware, Conshohocken, Pennsylvania, and Timonium, Maryland.

14. Bank 1 was a financial institution based in Salt Lake City, Utah, that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank 1 was an approved SBA lender of PPP loans.

15. Bank Processor 2 was a third-party company processor, based in Chicago, Illinois, that processed the PPP loan applications for Bank 2. Bank Processor 2 processed PPP loan applications at its office in Chicago, Illinois.

16. Bank 2 was a financial institution based in Portland, Maine, that was insured by the FDIC. Bank 2 was an approved SBA lender of PPP loans.

17. Bank 3 was a financial institution based in Fort Lee, New Jersey, that was insured by the FDIC. Bank 3 was an approved SBA lender of PPP loans.

**COUNTS 1-9**
**Wire Fraud**
**(18 U.S.C. § 1343)**

1. Paragraphs 1 through 17 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in and around April 2020, through in and around March 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERIC DEAN SHEPPARD,**

did knowingly, and with intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 2.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.   It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications and supporting documents for loans and grants made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic, including PPP loans and EIDLs; and (b) diverting fraud proceeds for the defendant's personal use, the use and benefit of others, and to further the fraud.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE

The manner and means by which the defendant and his accomplices sought to accomplish the object and purpose of the scheme and artifice included, among others, the following:

4.   **ERIC DEAN SHEPPARD** and his accomplices submitted and caused to be submitted false and fraudulent PPP loan and EIDL applications on behalf of Alafaya Trails, HMMD, and HM Four, via interstate wire communications.

5.   The PPP loan applications submitted and caused to be submitted by **ERIC DEAN SHEPPARD** masked payments to independent contractors as wages paid to W-2 employees in

order to qualify for the PPP loans.

6. The PPP loan and EIDL applications submitted and caused to be submitted by **ERIC DEAN SHEPPARD** included falsified documents, such as Internal Revenue Service ("IRS") and Florida Department of Revenue forms. The applications also misrepresented the type of business the borrowing entities were engaged in, as well as revenues, monthly payroll, and numbers of employees.

7. Some of the falsified documents submitted and caused to be submitted by **ERIC DEAN SHEPPARD** in support of the false and fraudulent PPP and EIDL applications contained the names and forged signatures of others, without the knowledge or consent of those individuals.

8. Based on the false and fraudulent PPP loan and EIDL applications submitted as part of this scheme, Bank 1, Bank 2, Bank 3, and the SBA disbursed loan proceeds to bank accounts controlled by **ERIC DEAN SHEPPARD** that were held by Alafaya Trails, HMMD, and HM Four, via interstate wire transmissions.

9. **ERIC DEAN SHEPPARD** and his accomplices used the proceeds from the fraud scheme for their own use, the use of others, and to further the fraud.

## USE OF WIRES

10. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **ERIC DEAN SHEPPARD**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds:

| Count | Approximate Date | Description of Wire |
|---|---|---|
| 1 | October 22, 2020 | Electronic submission of a false and fraudulent EIDL application on behalf of HM Four, from the Southern District of Florida to the SBA, resulting in an EIDL payment of approximately $150,000. |
| 2 | November 4, 2020 | Electronic submission of a falsified lease agreement on behalf of HM Four's EIDL application, from the Southern District of Florida to the SBA. |
| 3 | November 12, 2020 | Electronic submission of a falsified letter from a banker in support of HM Four's EIDL application, from the Southern District of Florida to the SBA. |
| 4 | January 19, 2021 | Electronic submission of a false and fraudulent PPP second draw loan application on behalf of Alafaya Trails, from the Southern District of Florida to Bank Processor 1. |
| 5 | February 11, 2021 | Electronic submission of false and fraudulent IRS Form 941s (Employer's Quarterly Tax Return) in support of Alafaya Trails' PPP second draw loan application, from the Southern District of Florida to Bank Processor 1. |
| 6 | February 26, 2021 | Electronic submission of a false and fraudulent IRS Form 1065 (U.S. Return of Partnership Income) in support of Alafaya Trails' PPP second draw loan application, from the Southern District of Florida to Bank Processor 1. |
| 7 | March 11, 2021 | Electronic submission of a false and fraudulent PPP second draw loan application on behalf of Alafaya Trails, from the Southern District of Florida to Bank Processor 2, resulting in a PPP loan of approximately $148,397. |
| 8 | March 11, 2021 | Electronic submission of false and fraudulent IRS Form 1065 (U.S. Return of Partnership Income) in support of Alafaya Trails' PPP second draw loan application, from the Southern District of Florida to Bank Processor 2. |
| 9 | March 12, 2021 | Electronic submission of a false and fraudulent PPP loan application, IRS Form 1065 (U.S. Return of Partnership Income), and IRS Form 940 (Employer's Annual Federal Unemployment Tax Return) on behalf of HMMD, from the Southern District of Florida to Bank 3, resulting in a PPP loan of approximately $148,591. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 10-14
### Aggravated Identity Theft
### (18 U.S.C. §1028A)

On or about the dates enumerated as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERIC DEAN SHEPPARD,**

during and in relation to a felony violation of Title 18, United States Code, Section 1343, that is, wire fraud, as charged in Counts 2, 3, 6, 8, and 9, of this Superseding Indictment, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, as specified in each count below:

| Count | Approximate Date of Use | Means of Identification |
|---|---|---|
| 10 | November 4, 2020 | Name, signature, and title of M.S., used on a falsified lease agreement electronically submitted to the SBA in support of HM Four's EIDL application. |
| 11 | November 12, 2020 | Name, signature, and title of H.B., used on a falsified bank letter electronically submitted to the SBA in support of HM Four's EIDL application. |
| 12 | February 26, 2021 | Name, Employer Identification Number ("EIN"), and Preparer Tax Identification Number ("PTIN") of N.C., used on a falsified IRS Form 1065 tax return electronically submitted to Bank Processor 1 in support of Alafaya Trails' PPP second draw loan application. |
| 13 | March 11, 2021 | Name, EIN, and PTIN of N.C., used on a falsified IRS Form 1065 tax return electronically submitted to Bank Processor 2 in support of Alafaya Trails' PPP second draw loan application. |
| 14 | March 12, 2021 | Name, EIN, and PTIN of N.C., used on a falsified IRS Form 1065 tax return electronically submitted to Bank 3 in support of HMMD's PPP loan application. |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Superseding Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ERIC DEAN SHEPPARD**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Superseding Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

   a. real property located at 180 Bal Cross Drive, Bal Harbour, Florida 33154-1390; and

   b. a sum of at least approximately $893,145 in U.S. currency, which represents the total amount of funds constituting, or derived from, proceeds traceable to the alleged offenses and fraud scheme, which may be sought as a forfeiture money judgment.

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
For MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 22-20290-CR-BLOOM(s)

v.

ERIC DEAN SHEPPARD,

_____/

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) No
Number of New Defendants
Total number of counts 14

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __7__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)            (Check only one)
   I   ☒ 0 to 5 days           ☐ Petty
   II  ☐ 6 to 10 days          ☐ Minor
   III ☐ 11 to 20 days         ☐ Misdemeanor
   IV  ☐ 21 to 60 days         ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) Yes
   If yes, Judge Bloom    Case No. 22-20290-Cr-Bloom
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Aimee C. Jimenez
Assistant United States Attorney
Court ID No.   A55000795

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ERIC DEAN SHEPPARD

**Case No:** 22-20290-CR-BLOOM(s)

Counts #: 1-9

Wire Fraud

18 U.S.C. § 1343
* Max. Term of Imprisonment: 20 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000

Counts #: 10-14

Aggravated Identity Theft

18 U.S.C. § 1028A(a)(1)
* Max. Term of Imprisonment: 2 years as to each count
* Mandatory Term of Imprisonment (if applicable): 2 years as to each count, consecutive to any other sentence imposed
* Max. Supervised Release: 1 year
* Max. Fine: $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.