**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-cr-20290-BLOOM**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC DEAN SHEPPARD,

    Defendant(s).

_____/

**OMNIBUS ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE SURPLUSAGE FROM THE SUPERSEDING INDICTMENT**

**THIS CAUSE** is before the Court on Defendant Eric Dean Sheppard's ("Defendant") Motion to Dismiss, ECF No. [85] ("Motion to Dismiss"), and Motion to Strike Surplusage from the Superseding Indictment, ECF No. [115] ("Motion to Strike"). The Government filed a Response in opposition to the Motion to Dismiss, ECF No. [108], and Defendant filed a Reply, ECF No. [114]. The Government also filed a Response in opposition to the Motion to Strike, ECF No. [119], and Defendant filed a Reply, ECF No. [120]. The Court has reviewed the Motions, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise duly advised. For the reasons that follow, the Motion to Dismiss and the Motion to Strike are denied.

**I. BACKGROUND**

On June 29, 2022, the Government filed an Indictment as to Defendant charging six counts of Wire Fraud (18 U.S.C. § 1343). ECF No. [3]. On August 23, 2024, the Government filed a Superseding Indictment, dropping three of the Wire Fraud Counts and charging Defendant with six new Counts of Wire Fraud and five Counts of Aggravated Identity Theft (18 U.S.C. § 1028A),

for a total of eleven new charges. *Compare* ECF No. [3] at 4-7 *with* ECF No. [60] at 4-8. Section 1028A provides in relevant part that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). In the Superseding Indictment, the Government alleges that Defendant engaged in a scheme and artifice to defraud among others the Small Business Administration (SBA), which administers the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan (EIDL) Program. *See id.* at 5. Defendant allegedly submitted false and fraudulent PPP and EIDL loan applications on behalf of three entities, Alafaya Trails, HMMD, and HM Four, and forged signatures of other persons for certain documents submitted in support of the loan applications. ECF No. [84] at 1; *see also* ECF No. [60] at 1-3 (describing the PPP and EIDL programs). The Superseding Indictment alleges that Defendant's scheme to defraud was mediated through or facilitated by the entities and four accomplices, respectively. *Id.* at 3, 5-6.

### A. Defendant's Motion to Dismiss

On September 15, 2023, Defendant filed the Motion to Dismiss, raising three principal arguments. First, Counts 10-14 must be dismissed under Rule 12(b)(3)(B)[1] because those Counts fail to plead a necessary element of Aggravated Identity Theft. Specifically, dismissal is warranted because the Supreme Court's decision in *Dubin v. United States*, 599 U.S. 110 (2023) requires that an indictment that chargers Aggravated Identity Theft allege that a defendant's misuse of another person's means of identification be "at the crux" of what makes the underlying defense criminal, or that the means of identity specifically be the "key mover in the criminality[,]" and the

---

[1] Unless otherwise noted, all references to Rules are to the Federal Rules of Criminal Procedure.

2

Case No. 22-cr-20290-BLOOM

Superseding Indictment fails to do so. ECF No. [85] at 7. Defendant submits as an example that Defendant's alleged submission of a false lease agreement and a banker letter in support of HM Four's EIDL loan application was ancillary because the crux of the wire fraud was Defendant's alleged submission of false and fraudulent loan applications. *Id.* at 6-7.

Second, Defendant contends that dismissal is warranted under Rule 12(b)(3)(A)(iv) for selective or vindictive prosecution because the Government has impermissibly done "more" than merely threatening during plea negotiations to reindict Defendant on more serious charges if he did not plead guilty to the offenses which were originally charged, namely by (1) deliberately choosing *not* to prosecute in the original Indictment the newer six counts of Wire Fraud, and the five counts of Aggravating Identity Theft, until *after* Defendant chose to go to trial; (2) failing to advise Defendant of its intent to prosecute those additional charges during plea negotiations, save for one of the additional counts of Wire Fraud; and (3) seeking forfeiture of Defendant's $6 million-dollar family home to secure $456,000.00 in loans that Defendant has been paying back. *Id.* at 7-9.

Third, Defendant asserts that dismissal of the forfeiture charge is warranted because the Government seeks $893,145.00, representing the "total amount of funds constituting, or derived from, proceeds traceable to the alleged offenses and fraud scheme", when the three loans in this action resulted in payment of only approximately $446,988.00. *Id.* at 8-9 (citing ECF No. [60] at 7, 9). In addition, forfeiture of Defendant's home is not warranted because Defendant closed his office and worked from home during the pandemic on a temporary basis.

The Government first responds that *Dubin v. United States* requires that the Government prove that there be a "genuine nexus" "between the use of a means of identification and the predicate offense." ECF No. [108] at 5 (quoting *inter alia United States v. Gladden*, 78 F.4th 1232,

1244 (11th Cir. 2023) (quoting *Dubin*, 599 U.S. at 117)). In its view, *Dubin* did not "change the magic words necessary to state [the] offense" of Aggravated Identity Theft because Congress, not the Judiciary, defines federal crimes. *Id.* For that reason, the Government submits that the practical consequence of *Dubin* is that the jury instructions must define what it means to "use[]" another person's means of identification for the purposes of Aggravated Identity Theft, not that an indictment must allege facts showing that a defendant's use of a victim's identity was the crux of what makes the charged conduct criminal. *Id.* at 5-6.

Second, the Government asserts that there is no causal relationship between Defendant's decision not to plead guilty and the additional charges. *Id.* at 7. The Government represents it sought to add more charges simply because it obtained more evidence after the case was initially indicted. *Id.* at 7. In particular, the Government maintains that *post-indictment* interviews and investigation revealed that Defendant's entities' tax returns were falsified and forged and, furthermore, the documents submitted to support an EIDL application for HM Four were also falsified and forged. *Id.* As a result, the Government dropped three wire fraud charges involving some of the loans to focus the Superseding Indictment on the falsified and forged documents that are central to Defendant's alleged scheme. *Id.* at 7-8. The Government submits the decision to add more charges is valid under Eleventh Circuit and Supreme Court precedent. *Id.* at 7. Moreover, the Government contends it is black letter law that adding more charges after a Defendant decides not to plead guilty does not demonstrate prosecutorial vindictiveness. *Id.* at 8.

Alternatively, the Government contends that, even if Defendant were correct that the Government added new charges to persuade him to plead guilty and forego his right to trial, that fact alone does not amount to vindictiveness. The Government asserts that a prosecutor's attempt to prevent a Defendant exercising a protected right is vindictive as violative of due process, but an

attempt to persuade a defendant to plead guilty and not go to trial is not vindictive because the refusal to plead guilty is *not* a protected right. *Id.* at 8-9. The Government further contends that Defendant's lead case, *United States v. Watson*, 400 F. App'x 442 (11th Cir. 2020), does not support that the circumstances here constituted the "more" that Defendant claims is required to show vindictiveness. *Id.*

Third, the Government responds that Defendant's arguments to dismiss the forfeiture allegations are deficient and premature under Rule 32.2. Moreover, its allegations are more than sufficient under Rule 32.2(a), because the Government went "above and beyond" in providing the notice required and, in any event, it adequately specified in the Superseding Indictment the amount of money and specific property it sought. *Id.* at 9-10.

Defendant first replies that the Government's reading of *Dubin* is flawed in part because indictments and jury instructions would "consistently be at odds with one another, as is the case here[,]" and cause the jury to be misled if *Dubin* required only that jury instructions but not an indictment allege that the identity theft be at the crux of the underlying crime. ECF No. [114] at 2. Defendant also replies that the Government entirely ignored its argument that the forfeiture allegations state the wrong amount of funds constituting, or derived from, proceeds traceable to the alleged offenses and scheme.[2]

---

[2] Also, Defendant states the Government's vindictiveness is shown by its purportedly inaccurate and misleading Notice of Intent to Introduce 404(b) Evidence, ECF Nos. [77], [113]. *Id.* at 2. Defendant further presents argument concerning Defendant's home and whether SBA funds are traceable. *Id.* at 2-3. However, reply memoranda are "strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law." S.D. Fla. L.R. 7.1(c)(1). Accordingly, the Court need not evaluate those arguments, particularly where Defendant has not presented authorities supporting the additional matters. *See United States v. Williams*, 29 F.4th 1306, 1314 (11th Cir. 2022) ("Since issues must be raised in a party's opening brief to be timely, Williams raising a voluntariness challenge under *Hernandez* in his reply brief does not excuse his forfeiture." (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014)).

### B. Motion to Strike Surplusage

On October 5, 2023, Defendant filed his Motion to Strike wherein Defendant argues that specific allegations concerning loan applications are surplusage and irrelevant, inflammatory, and prejudicial. ECF No. [115] at 3. Defendant also argues the Superseding Indictment's four references to Defendant's accomplices are irrelevant, inflammatory, and unduly prejudicial because Defendant is not charged with a conspiracy and the accomplices are not charged. *Id.* at 4-5. The Government disputes that the specific allegations are irrelevant, inflammatory, and unduly prejudicial. ECF No. [119] at 2-5. The Government further responds that Defendant need not be charged with conspiracy, nor must the Government charge accomplices to allege that Defendant's alleged wire fraud scheme had accomplices. *Id.* at 5. The Court addresses the parties' arguments in more detail below.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution[.]" *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). However, on a motion to dismiss, the indictment the district court must not "pierce the pleadings or make a premature resolution of the merits of the allegations." *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978).[3]

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the court adopted as binding precedent all decisions of the Fifth Circuit issued prior to October 1, 1981.

Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). Generally, "[t]he indictment is sufficient if it charges in the language of the statute." *Id.* Moreover, "[c]onstitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *Id.* at 308; (citation omitted) *see also United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the Government. *See Torkington*, 812 F.2d at 1354.

### B. Motion to Strike

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7. "A motion to strike surplusage from an indictment should not be granted 'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most "exacting standard."'" *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (citing *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990) (quoting 1 Charles A. Wright, *Federal Practice and Procedure* § 127 at 424-29 (1982)). An allegation that does not affect a charge and need not be proved may be rejected as mere surplusage. *United States v. Noveck*, 271 U.S. 201, 203, 46 S. Ct. 476, 477, 70 L. Ed. 904 (1926). "The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial." *United States v. Northcutt*, No. 07-60220-CR, 2008 WL 162753, at *6 (S.D. Fla. Jan. 16, 2008) (citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).

### III. DISCUSSION

The Court first addresses Defendant's Motion to Dismiss and proceeds to consider his Motion to Strike.

### A.  Motion to Dismiss

Defendant raises three principal arguments in support of his Motion to Dismiss. The Court addresses each of these arguments in turn.

### i.  The Crux of the Aggravated Identity Theft Offenses

The Court begins with *Dubin*. There, the defendant was convicted of healthcare fraud and Aggravated Identity Theft under § 1028A(a)(1) for overbilling the Medicaid program—by inflating the value of the services provided to a patient by a psychological services company the defendant's father managed. *Dubin*, 599 U.S. at 114-15. In doing so, the defendant included in his fraudulent billing the patient's Medicaid reimbursement number, a means of identification. *Id.* at 115. The Government asserted § 1028A(a)(1) was "automatically satisfied" on that fact. *Id.* The district court observed that the prosecution "[didn't] seem to be an aggravated identity theft case[;]" instead, the district court explained that "the whole crux of [the] case [was] how [the defendant] was billing" but nevertheless denied the defendant's post-trial challenge to the aggravated identity theft conviction, explaining that he was bound to follow Fifth Circuit precedent on the issue. *Id.* A divided panel of the Fifth Circuit affirmed the district court. *Id.* However, the Supreme Court reversed the Fifth Circuit, holding that the words "use" and "in relation to" in § 1028A should not be construed so that the provision would "apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses." *See Dubin*, 599 U.S. at 117; *Gladden*, 78 F.4th at 1244 (11th Cir. 2023) (quoting *Dubin*, 599 U.S. at 117). Rather, § 1028A applies where there is "a genuine nexus" between the use of a means of identification and a predicate offense. *See Dubin*, 599 U.S. at 177; *Gladden*, 78 F.4th at 1244 (quoting *Dubin*, 599 U.S. at 117). A genuine nexus

requires that the means of identification be "a key mover in the criminality." *Dubin*, 599 U.S. at 122-23.

Accordingly, *Dubin* stands for the proposition that § 1028A does not automatically apply merely where a means of identification is used in the commission of an underlying crime. However, the question here is whether the means of identification implicated in this case is a "key mover" in Defendant's alleged criminality. *Gladden* is instructive on this point. In *Gladden*, the defendant forged prescriptions for former patients of the company that he was managing and had represented to pharmacy benefit managers and insurance companies that he was filling those prescriptions for the former patients when the drugs were being sent to the company's owner, not the former patients. *Gladden*, 78 F.4th at 1245. In the Eleventh Circuit's judgment, the defendant's forgeries were "at the heart of the deception" in that case: the defendant used the identities of others to continue refilling prescriptions in their names, even though they were neither aware of nor received any drugs. *Id.* at 1238, 1245. Accordingly, the Eleventh Circuit distinguished those cases that fall under *Dubin*, where a person merely misrepresents the nature or character of a good or service delivered to another person to overbill for that good or service and happens to use the other person's means of identification to further the misrepresentation, from those that do not fall under *Dubin*, where a person fabricates a means of identification of another without that other person's knowledge or consent. In the latter case, a defendant can be said to have stolen a person's identity, "the classic variety of identity theft left untouched by *Dubin*." *Id.* at 1246. *Gladden* applied this distinction as follows:

> [U]nlike in *Dubin*, [the defendant] did not provide a service to a client while merely misrepresenting how the service was performed to inflate the bill. Rather, [the defendant] used the means of identification of former patients and prescribing doctors to overbill for certain products. . . . Her use of [the former patients'] identifying information was itself fraudulent or deceptive because [the defendant] represented those patients were receiving the refills, despite shipping the product

> to [the company owner]. And her use of [a prescribing doctor's] means of identification was fraudulent because she falsely represented he had authorized the additional prescriptions for [a company sales representative].

*Id.*

Here, the Superseding Indictment alleges that Defendant submitted PPP and EIDL applications that included falsified documents. ECF No. [60] at 6. Some of the falsified documents contained the names and forged signatures of others without their knowledge or consent. *Id.* Thus, the Superseding Indictment alleges that Defendant fabricated the means of identification of others without their knowledge and consent to obtain a personal benefit. Such fabrication amounts to identity theft and does not fall under *Dubin*. *See Dubin*, 599 U.S. at 1570 ("As the definitions reveal, identity theft covers both when 'someone steals personal information about and belonging to another . . . and uses the information to deceive others[.]'" (quoting *Black's Law Dictionary* (11th ed. 2019))). Because the parties agree that the Aggravated Identity Theft Counts track the statutory language, and because Defendant raises no Constitutional arguments against the language within those Counts,[4] the Superseding Indictment sets forth the essential elements of Aggravated Identity Theft, and dismissal of the Superseding Indictment is not warranted.

### ii. Prosecutorial Vindictiveness

The Court turns to *United States v. Watson*, Defendant's lead case on the issue of prosecutorial vindictiveness. There, the Eleventh Circuit explained that where a presumption of vindictiveness does not apply, a defendant bears the burden of demonstrating actual vindictiveness. *Watson*, 400 F. App'x at 445 (citing *United States v. Barner*, 441 F.3d 1310, 1317, 1322 (11th Cir.

---

[4] *See United States v. Harrell*, 737 F.2d 971, 975 (11th Cir. 1984) ("an indictment will pass constitutional muster: if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend[.]").

2006)).[5] *Watson* further instructed that "a prosecutor does not violate a defendant's constitutional rights merely by obtaining a superseding indictment after the defendant has rejected a plea offer." *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363-65 (1978)). *Watson* found that the district court in that case did not abuse its discretion in denying the defendant's motion to dismiss a superseding indictment. *Id.* As set forth above, Defendant contends there exists prosecutorial vindictiveness because the Government (1) originally chose not to prosecute the charges that first appeared in the Superseding Indictment until after Defendant rejected a plea offer; (2) failed substantially to warn Defendant of those additional charges; and because (3) seeks forfeiture of Defendant's family home. However, even accepting Defendant's version of the plea negotiations in this case, *Watson* does not indicate that any of these bases support a finding of "actual vindictiveness[.]" Moreover, the discussion in *Watson* indicates that the prosecutorial vindictiveness inquiry turns on whether the prosecutor seeks to violate a defendant's constitutional rights, but no violation has occurred here. While it is plainly a due process violation for a prosecutor to "pursue a course of action whose objective is to penalize a person's reliance on his legal rights," the filing of charges on which a defendant is "plainly subject to prosecution" is not violative of the Due Process Clause of the Fourteenth Amendment. *See Bordenkircher*, 434 U.S. at 363-65 ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). For that reason, a prosecutor's filing of a superseding indictment after a defendant rejects a plea offer is *not* a

---

[5] The Eleventh Circuit has observed that "[a] prosecutor's decision to seek heightened charges after a defendant successfully appeals his conviction for the same conduct is presumed to be vindictive." *Barner*, 441 F.3d at 1315-16. That presumption does not apply here given the procedural posture of the case, and Defendant has not pointed to other circumstances that give rise to a presumption of prosecutorial vindictiveness.

violation of that defendant's constitutional right to a jury trial. Defendant thus fails to carry his burden to show actual vindictiveness.

### iii. Forfeiture

Rule 32.2(a) expressly provides in relevant part that an "indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a). As such, Defendant's arguments concerning the incongruity between the loan amounts in this case and the amount sought for forfeiture, and the fact that Defendant has sought to pay down the loans, are misplaced, particularly since Rule 32.2(a) concerns "Notice to the Defendant." *Id.* Absent any supporting legal authorities that establish that the Superseding Indictment's forfeiture allegations warrant dismissal on the grounds Defendant advances, the Court is not persuaded by Defendant's cursory arguments.

## B. Motion to Strike

Defendant seeks the striking of six sets of allegations in the Superseding Indictment. The Court addresses each set of allegations in turn.

### i. Page 2, Paragraph 3

Page 2, paragraph 3 of the Superseding indictment states:

Businesses could apply for PPP loans by submitting a PPP loan application (SBA Form 2483). The PPP loan application required that these businesses acknowledge, through authorized representatives, the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, these businesses, through authorized representatives, had to state their: (a) average monthly payroll expenses, and (b) number of employees. Because independent contractors were able to apply for PPP loans on their own, employers' payroll calculations and number of employees were based on wages paid to W-2 employees, not payments to independent contractors. The employers' payroll expenses were used to calculate the amount of money the applicant businesses were eligible to receive under the PPP. In addition, these businesses had to provide documentation evidencing their payroll expenses; *typically, businesses would supply documents showing the amount of payroll taxes reported to the IRS.*

ECF No. [60] at 2 (emphasis added). Defendant argues that what businesses "typically" would supply is irrelevant because it is not an element of the charged offense and would confuse the jury because the allegation would lead the jury to believe that Defendant did not do what a business "typically" does under the circumstances and would place the onus on Defendant to "explain this away." ECF No. [115] at 3. The Government responds that the paragraph is "meant to illustrate the types of documents that businesses provided and that lenders requested" under the PPP. ECF No. [119] at 3. Moreover, the Government responds that Defendant supplied "the very same type of documents identified in that sentence, which purportedly showed the amount of payroll taxes reported to the IRS." *Id.* at 3.

As preliminary matter, the Court disagrees with Defendant to the extent he argues that an allegation in an indictment is surplusage simply because the allegation need not be proved as an element of the offense. An allegation is "mere surplusage" where it "does not affect the charge" *and* "need not be proved." *Noveck*, 271 U.S. at 203. What businesses "typically" provide to evidence payroll expenses as part of a PPP loan application may not be an element of the charged offense, but it is relevant to show that the evidence that PPP loan applications required of applicants. It is the Government's contention that the evidence Defendant provided to the SBA was falsified, which is relevant at least to the wire fraud charges in this case. As such, the sentence is not mere surplusage. Nor is it unduly prejudicial given the Government's representation that Defendant supplied the type of documentation that businesses "typically" supply. Defendant has not met the exacting standard set forth by the Eleventh Circuit in *United States v. Awan*, 966 F.2d 1415 (11th Cir. 1992) for the Court to strike the paragraph.

    **ii.**    **Page 2, Paragraph 4**

Page 2, paragraph 4 of the Superseding indictment states:

> A PPP loan application had to be processed by a participating lender or the participating lender's delegee. If a PPP loan application was approved, the lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the reports and documentation regarding the business's income and expenses, were transmitted by the lender to the SBA in the course of processing the loan.

ECF No. [60] at 2. Defendant argues "what the loan process was supposed to be" is completely irrelevant to the charged offenses. ECF No. [115] at 3. The Government responds that the paragraph is relevant to the wire fraud charges involving the PPP loans. ECF No. [119] at 3-4. The Court agrees with the Government. The information in the paragraphs connects Defendant's alleged use of interstate wire communications with the alleged purpose of the scheme, which was allegedly to divert proceeds from the SBA for Defendant's personal use. ECF No. [60] at 5. The paragraph is therefore not mere surplusage.

### iii.    Page 2, Paragraph 5

Page 2, paragraph 5 of the Superseding Indictment states:

> PPP loan proceeds were required to be used by the business on certain permissible expenses- employee payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

ECF No. [60] at 2. Defendant contends that paragraph will only "seek to confuse the jury" because Defendant did not seek loan forgiveness on the charged loans. ECF No. [115] at 3. The Government responds that it seeks to prove a scheme by Defendant to defraud the SBA and private lenders, and that the supporting evidence includes a PPP loan application that Defendant submitted on behalf of Alafaya Trails, for which Defendant later sought and obtained forgiveness. ECF No. [119] at 4.

Evidence that supports the truth of the allegations in the paragraph would be relevant to show the manner and means by which Defendant's allegedly sought to enrich himself and others. ECF No. [60] at 5. The paragraph is relevant to prove the scheme and is not mere surplusage.

### iv.  Page 3, Paragraph 7

Page 3, paragraph 7 of the Superseding Indictment states:

> The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In order to obtain a COVID-19 EIDL, a qualifying business was required to submit an EIDL application to the SBA and provide information about its operations, *such as the number of employees and gross revenues and cost of goods sold for the 12-month period preceding January 31, 2020*. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

ECF No. [60] at 3 (emphasis added). Defendant contends the Government is cherry picking certain requirements of the EIDLs and that this cherry picking is inflammatory and unduly prejudicial. ECF No. [115] at 4. The Government responds that the information in this paragraph sets forth basic requirements for an EIDL application. ECF No. [119] at 4. Because the listed requirements are pertinent to EIDL applications, and Defendant is charged for wire fraud in connection with the EIDL program, the information in that paragraph is relevant to prove the alleged scheme to defraud the SBA and others, and nothing about those requirements is prejudicial or inflammatory. The paragraph is not mere surplusage.

### v.  Page 3, Paragraph 8

Page 3, paragraph 8 of the Superseding Indictment states:

> EIDL applications were submitted directly to the SBA, which processed the applications with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on *the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold*. The SBA issued any funds under an EIDL directly to the applicant.

15

ECF No. [60] at 3 (emphasis added). Defendant contends the information is not required to prove the charges, is prejudicial and inflammatory because the information described in the paragraph "is not known by the applicant[,]" and that there were other variables that informed the SBA's determination for the approval of an application. ECF No. [115] at 4. The Government responds that it will seek to prove the EIDL application requirements and how the loan amount is determined. ECF No. [119]. The information on how the SBA approves an EIDL loan is relevant to show that Defendant's EIDL loan applications were fraudulent, which is further relevant to certain wire fraud and aggravated identity theft charges. *See, e.g.*, ECF No. [60] at 7-8 (describing wire transfers related to, and the use of means of identification for, two EIDL loan applications). That information is thus relevant and not inflammatory or unduly prejudicial. The paragraph is not mere surplusage.

  **vi. Accomplices**

Defendant states the Superseding Indictment refers to Defendant's alleged accomplices four times. ECF No. [115] at 4-5. Defendant submits those references are irrelevant because Defendant is not charged with conspiracy and the Government did not charge alleged accomplices. *Id.* The Government responds that Defendant neither has to be charged in a conspiracy, nor does the Government need to charge others in this case, to allege that the Defendant's wire fraud scheme had accomplices. ECF No. [119] at 5. The Government represents that the subject of three wire fraud counts in the Superseding Indictment is an EIDL loan on behalf of HM Four. *Id.* The Government also avers that Defendant's wife, who is not charged in this case, was the applicant and signer on the loan application for that loan. *Id.* As such, the Government asserts it has a factual basis for the references to accomplices in the Superseding Indictment. *Id.* Defendant replies that the Government's Response makes plain the allegations concerning accomplices relate only to

16

three out of the nine counts of wire fraud and yet the allegations concern all nine counts of wire fraud. ECF No. [120] at 1-2 (citing ECF No. [60] at 4-7). Defendant contends that the allegations are irrelevant to six of the counts of wire fraud and on that basis are inflammatory because the allegations will "give the impression to the jury that there were accomplices in Defendant's alleged scheme, but the jury will not hear anything about them." *Id.* at 2.

The Superseding Indictment alleges the purpose of the alleged scheme, which was for Defendant and his accomplices to enrich themselves. ECF No. [60] at 5, 6. The Superseding indictment also alleges that manner and means by which Defendant and his accomplices sought to accomplish the scheme's purpose, which include submitting or causing to be submitted false and fraudulent PPP loan and EIDL applications via interstate wire communications. *Id.* at 5. Moreover, the Superseding Indictment alleges nine specific instances of wire fraud. Defendant appears to conflate the specific instances of wire fraud with both the purpose and the manner and means of the scheme to commit wire fraud alleged. The latter is relevant to the former; since the involvement of accomplices is relevant to the purpose and manner and means of the scheme, it is necessarily relevant to the specific uses of the wires alleged. Defendant provides no basis in law or fact requiring that any reference to accomplices be cabined to each count for which there was alleged involvement by those accomplices. As such, Defendant has not shown that the references to accomplices are irrelevant.

Moreover, even if the references to accomplices are irrelevant to six of the wire fraud counts, Defendant must also show that the references are inflammatory. Defendant is unable to do so: to the extent the evidence may show accomplices were involved with some of the wire fraud counts, the Government can show that the accomplices were involved in a fraudulent scheme. Under those circumstances, the jury may validly form the impression that the alleged scheme was

facilitated by accomplices, even if the accomplices were not involved with every instance of wire fraud. As such, Defendant has not met the exacting standard for the Court to strike the paragraph.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss, **ECF No. [85]**, is **DENIED**.

2. The Motion to Strike, **ECF No. [115]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 31, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record