UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cr-20290-BLOOM**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ERIC DEAN SHEPPARD,

      Defendant(s).

_____/

**ORDER ON MOTION *IN LIMINE* REGARDING RULE 404(B) NOTICE**

**THIS CAUSE** is before the Court on Defendant Eric Dean Sheppard's ("Defendant")

Response to Notice of Rule 404(b) Evidence, Motion in Limine and Request for Evidentiary

Hearing, ECF No. [113] ("Motion"). The Government filed a Response, ECF No. [116], to which

Defendant filed a Reply, ECF No. [118]. The Court has reviewed all supporting and opposing

submissions, the record in this case, the applicable law, and is fully advised. For the following

reasons, the Motion is denied.

    **I.**    **BACKGROUND**

The Court has previously set forth background on the above-styled action, *see* ECF Nos.

[40], [111], [121], and assumes the parties' familiarity with the facts yet recites background which

pertinent to the Motion's adjudication. On September 14, 2023, the Government filed a Notice of

Intent to Use Rule 404(b) Evidence. ECF No. [77] ("Notice").[1] Although Rule 404(b) prohibits

---

[1] Unless otherwise indicated, all references to the Rules are to the Federal Rules of Evidence. The
Government filed the Notice in accordance with Rule 404, which requires the Government to do the
following in a criminal case:
      (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at
      trial, so that the defendant has a fair opportunity to meet it;

the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" the Rule permits the admission of such evidence for "another purpose, such as proving motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2).

The Government represents that on September 8, 2023, it learned during an interview of a potential witness in this case, J.G., of evidence it will seek to introduce at trial for the purpose of proving "intent, preparation, plan, knowledge, absence of mistake, or lack of accident". ECF No. [77] at 1. According to the Government, J.G. learned that Defendant "had forged J.G.'s signature and had misrepresented J.G. as the applicant/sponsor for a non-immigrant visa application on behalf of an individual who would purportedly fill a full-time 'graphic designer' position at the defendant's business, HM Management and Development, LLC" ("HM Management"). *Id.* at 2. The Government argues it has a "substantial burden" to prove intent because Defendant has placed his intent into question. *See id.* at 3 (citing *United States v. Zapata*, 139 F.3d 1355 (11th Cir. 1998)). As such, the Government submits that the evidence is admissible because the state of mind required for the charged offenses is the same as Defendants' state of mind regarding the conduct of submission of the visa application materials. *Id.* at 4. The Government intends to demonstrate Defendant's intent with respect to the visa application materials through J.G.'s testimony, copies of certain purportedly falsified and forged documents that J.G. received, and a copy of Defendant's letter to his former immigration counsel that purportedly contains "implied admissions about

---

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
(C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

[Defendant's] conduct." *Id.* The Government submits that any risk of unfair prejudice in admitting the evidence relating to the visa application materials may be mitigated with a limiting instruction.

Defendant responds in part that the evidence the Government seeks to introduce is propensity evidence that is not evidence of Defendant's intent. ECF No. [113] at 3. In particular, Defendant maintains that the FBI Interview Report Forms FD-302 that the Government produced show that J.G. "was shocked to hear" that during 2018, Defendant "provided a Notice of Entry of Appearance as Attorney . . . (DHS Form G-28) for a TN-2 . . . work visa" that listed J.G. as the "Petitioner" and on which there was J.G.'s signature. *Id.* at 3 (citing the Form FD-302). J.G. further represented that he did not complete the form and he did not authorize the use of his name on that form. *Id.* Further, J.G. explained he did not sign or complete any documents that relate to the DHS Form G-28. *Id.* Defendant reasons those statements are not statements of J.G.'s belief that Defendant forged J.G.'s name on the visa application materials. *Id.* Defendant also contends J.G. lacks personal knowledge to back up the accusation that Defendant submitted fraudulent visa application materials. *Id.* at 4. Defendant argues that the Government cannot prove Defendant's intent with respect to the visa application materials and the Government's Rule 404(b) disclosure fails to identify the purported misrepresentations, and Defendant did not make an "'implied admission' of wrongdoing[.]" *Id.* at 5.

Moreover, Defendant argues the evidence the Government seeks to admit is unfairly prejudicial both under Rule 404(b) and Rule 403 because the Notice is untrue, the jury would draw the impermissible inference that Defendant has a tendency to submit fraudulent documents, the Government has failed to make a showing of "prosecutorial need" for the evidence, and the conduct underlying the submission of the fraudulent visa application materials and the filing of the

fraudulent loan applications are not sufficiently similar. *Id.* at 6-9. Defendant requests an evidentiary hearing on the Notice. *Id.* at 10.

The Government responds that the Court need not conduct a Rule 404(b) analysis because the evidence is admissible as intrinsic evidence that is inextricably intertwined with the offenses charged or is necessary to "complete the story[.]" ECF No. [116] at 4-5. The Government contends that the FD-302 Report provided is intended as a summary of the interview, not as a J.G. witness statement. *Id.* at 5 n.1. The Response sets forth in more detail the nature of the 404(b) evidence that it disclosed based on the Notice. First, J.G. is expected to testify that he was an officer or "manager" of several of Defendant's corporations, including HM Management, until March 2019, and he worked alongside Defendant for 20 years until March 2020. *Id.* at 1-2, 5. Next, the Government plans to elicit the circumstances giving rise to J.G.'s testimony. Specifically, J.G. is expected to testify that he learned his name had been misused when the billing department of a law firm contacted him to be paid for services rendered. *Id.* at 3. J.G. learned of that misuse when reviewing the law firms' documents, which showed his name and signature has been used without his permission to sponsor the visa application. *Id.* Once J.G. learned of the use of his name and signature, he immediately directed Defendant's then-corporate counsel to replace his name on the State of Florida, Division of Corporations' records with Defendant's name. *Id.* at 2. J.G. took that step so Defendant would not be able to use his name and title as the legal representative of HM Management. *Id.* J.G. is also expected to testify that he confronted Defendant about the use of his name and signature, who told J.G. that "I have to clean up the mess you made!" *Id.* at 3, 5 n.1.

J.G. provided the Government with a copy of a March 11, 2019 email for corroboration. *Id.* J.G. also provided the Government with a May 2, 1018 "engagement letter agreement" between HM Management and a law firm that contains J.G.'s name and purported signature as manager of

HM Management. *Id.* at 2. J.G. stated that he had not hired the law firm for any purpose, his name and title were used on the engagement letter without his knowledge and permission, and his signature had been forged in connection with the events involving the visa application. *Id.* at 2-3. J.G. stated that he knew Defendant had forged the signature and writing on the engagement letter because he is familiar with Defendant's handwriting, and—as to the letter to the U.S. Embassy in Mexico and the DHS Form G-28—J.G. is expected to testify that the person who signed or forged his name would have done so at Defendant's direction. *Id.* at 3.[2] In addition, J.G. knows the visa applicant as someone who worked in a marketing capacity and was not someone who was expected to be employed as a fulltime graphic designer at HM Management. *Id.*

The Government also explains the basis for its belief that Defendant's letter contains implied admissions. According to the Government, Defendant asserts the engagement letter had been "inadvertently executed by [his] office" and J.G.'s name "was supposed to be removed," and that J.G. "forwarded the engagement letter without even looking at the signature so that would ultimately be my inadvertent mistake." *Id.* at 7-8. Regarding the submission of the visa application materials, Defendant asserted, "I personally was not in [t]own as I was on vacation and instructed people by telephone while hiking on a mountain, so obviously a misunderstanding occurred." *Id.* at 8. Defendant further represented that there was "in no shape or form" any intention or bad faith in the engagement letter, but that it was a misunderstanding and carelessness by staff that brought about its transmission to the law firm. *Id.*

In the Government's view, the foregoing is highly probative of Defendant's intent in this case. Specifically, the Government asserts that the 404(b) evidence supports that Defendant's alleged use of J.G.'s means of identification was not due to the "carelessness" of his staff because

---

[2] The letter to the U.S. Embassy in Mexico is part of the visa application materials discussed above.

it shows that Defendant did not make a mistake or accident in submitting the visa application materials. *Id.* at 9. The Government further replies that the probative value of the 404(b) evidence is not substantially outweighed by the danger of undue prejudice because the evidence involves a single event that is close in time to the events of this case. *Id.*

Defendant replies that J.G.'s testimony that another person who signed or forged J.G.'s name would have done so at Defendant's direction is pure speculation. ECF No. [118] at 4. Defendant also argues that J.G. claims no personal knowledge as to whether the visa applicant could fulfill the work of a fulltime graphic designer and the Government cannot prove Defendant knew whether the statement in the visa application was false. *Id.* at 6. Defendant contends testimony from J.G. that Defendant forged his signature on the engagement letter is speculative.

## II.   LEGAL STANDARD

Rule 404(b) prohibits evidence of another crime, wrong, or act to prove a person's character to show action in conformity with that character. Specifically, the Rule prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

"To be admissible, the Rule 404(b) evidence (1) must be relevant to an issue other than the defendant's character, (2) there must be sufficient proof to allow a jury to find that the defendant committed the extrinsic act, and (3) the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and that the evidence must meet the other requirements of Rule 403." *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012)

(quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992)); *see also United States v. Matthews*, 431 F.3d 1296, 1310-1311 (11th Cir. 2005) (citing *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)).

## III. DISCUSSION

The Court addresses the Motion by considering each of the three prongs set forth in *United States v. Beechum* in turn.[3]

### A. Relevance

By pleading not guilty, Defendant has placed his intent to engage in a scheme to submit false and fraudulent applications to obtain PPP loans and EIDLs in issue. *See United States v. Barrington*, 648 F.3d 1178, 1186 (11th Cir. 2011) ("By pleading not guilty, Barrington placed his intent to participate in the grade changing scheme in issue."). Accordingly, the Government may introduce qualifying 404(b) extrinsic act evidence to prove intent, the relevance of which is determined "by comparing the defendant's state of mind in perpetrating the extrinsic and charged offenses." *Id.* (quoting *United States v. Dorsey*, 819 F.2d 1055, 1060 (11th Cir. 1987)).

Because Defendant has placed his intent at issue, the Government may seek to introduce 404(b) evidence if that evidence is relevant to Defendant's intent in allegedly committing the charged offenses. Defendant is charged with purposely executing a scheme to defraud the Small Business Administration, knowingly obtaining money by means of materially false and fraudulent representations via nine wire transfers, and with knowingly using the means of identification of another person without lawful authority in executing five of the wire transfers. ECF No. [60] at 6,

---

[3] Defendant asserts "[t]he Government's Response makes different and completely new allegations from those set forth in the Notice", ECF No. [118] at 4. To the extent Defendant makes that assertion to argue the Notice is deficient, the question is whether the Notice fails to "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial", Fed. R. Evid. 404(b)(3)(A). For the reasons stated below, the Court finds the Notice provides "reasonable notice" of the 404(b) evidence and considers whether the evidence is permissible under Rule 404(b)(2).

8. Accordingly, conduct that tends to show Defendant knowingly used the means of identification of another person without lawful authority in a prior instance would be relevant to Defendant's intent with respect to charged conduct. *See Barrington*, 648 F.3d at 1187 (finding that defendant's extrinsic conduct—previously changing grades using forged instructor signatures on university grade change slips—involved the same intent as charged conduct by defendant in alleged scheme to change students' grades on university's internet-based grading system).

Here, the alleged extrinsic conduct is Defendant's use of J.G.'s name and signature to sponsor a visa application. The extrinsic conduct is relevant to Defendant's intent if Defendant knowingly used J.G.'s name and signature without his approval. The Government expects J.G. to testify that he learned his name and signature were used without his permission when a law firm contacted him to be paid for legal services. J.G. will further testify that he recognized Defendant's handwriting on the engagement letter and that others would have signed or forged J.G.'s name and signature on the letter to the U.S. Embassy in Mexico and the DHS Form G-28 at Defendant's direction. If J.G. can establish how he is familiar with Defendant's handwriting, and how he knows whether someone would have forged his name at Defendant's direction,[4] J.G.'s testimony and the corroborating documentary evidence would be relevant to whether Defendant knowingly used J.G.'s means of identification in the visa application without his consent which necessarily means it is relevant under Rule 404(b). The alleged extrinsic conduct makes more probable that Defendant had the requisite intent in carrying out the charged offenses. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). J.G.'s testimony

---

[4] *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

would be highly probative of Defendant's intent in this case. *See Barrington*, 648 F.3d at 1186-87 (finding that extrinsic act evidence was highly probative where defendant claimed that he was merely present while others installed keyloggers, changed grades and concealed activities).

Defendant maintains that the Government cannot show intent or state of mind based on the submission of the visa application materials because J.G. lacks personal knowledge. *See, e.g.*, ECF No. [113] at 5. Although Defendant is correct that a lay witness may not testify on a matter of which he or she has no personal knowledge,[5] it is premature to arrive at that conclusion. To the extent the Government can lay a foundation for J.G.'s testimony under Rule 602, he may testify regarding the visa application materials. The Governments' submissions logically support that J.G. has personal knowledge as to whether his means of identification was misused in the visa application materials. First, J.G. may certainly testify that he did *not* authorize the use of his name and signature. Also, there is a basis for the evidence to support that J.G. knew Defendant misused J.G.'s means of identification or directed another to do so. According to the Government, J.G. has worked alongside Defendant for twenty years and served as an officer or manager for HM Management. J.G.'s business experience working with Defendant provides a foundation for J.G.'s belief that Defendant misused J.G.'s means of identification to the extent that experience informs how HM Management engages outside counsel and addresses employees' immigration matters. For example, if J.G. knows that it is the routine practice of HM Management for Defendant to direct others to sign on his or others' behalf, J.G. can testify to that effect. *See* Fed. R. Evid. 406 ("Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice. The court may

---

[5] *See* ECF No. [118] at 5 (citing *Pineda v. Pescatlantic Group, LLC*, 16-25291-CIV, 2018 WL 11346674, at *4 (S.D. Fla. Aug. 16, 2018)).

admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."). If J.G. can otherwise testify to how his experience led to J.G.'s belief that Defendant or another at Defendant's direction misused his means of identity, the testimony may be admissible.

Defendant seeks to distinguish *Barrington* on the grounds that the extrinsic conduct was similar to the charged scheme in its objectives and provided the context for the charged conspiracy, and the witness who testified had personal knowledge of it. However, based on the Government's representations, it appears that J.G. has personal knowledge of the subject of his testimony, and Defendant does not contest that extrinsic conduct that involves the same intent as the charged conduct is relevant for the purpose of Rule 404(b)(2). As such, the Court finds J.G.'s testimony is relevant for a permissible purpose under Rule 404(b).

In arguing that the Government's cases, including *Barrington*, are inapposite, Defendant suggests that the first prong of the *Beechum* test requires that the prior acts be "almost identical to the charged offenses." ECF No. [113] at 6-7. To the extent that Defendant is arguing that the case law demands that the prior acts be almost identical to the charged offenses, that argument ignores that the court's inquiry must be on the state of mind of the Defendant, not the substantial identity of the extrinsic conduct and the charged conduct. The first prong of the Rule 404(b) test is satisfied when the state of mind required for the charged offense and the extrinsic act are identical. *Barrington*, 648 F.3d at 1186; *see also Zapata*, 139 F.3d at 1358 ("Where the state of mind required for both offenses is the same, the extrinsic crime is relevant to the charged offense"); *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) (same); *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008) (citing *Beechum*, 582 F.2d at 911 ("the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of

both the extrinsic and charged offense")). For that reason, the Court is not persuaded by Defendant's argument.

### B. Sufficiency of Proof that the Defendant Committed the Extrinsic Act

The second prong of the *Beechum* test forms part of the relevance analysis because the extrinsic act would not be relevant unless the extrinsic act occurred, and the actor was the Defendant. *Miller*, 959 F.2d at 1538 n.4; *United States v. Bowe*, 221 F.3d 1183, 1192 ("The prosecution can introduce evidence of a defendant's otherwise admissible acts if the jury could find by a preponderance of the evidence that the acts did in fact occur." (citation omitted)); *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."). Accordingly, there must be sufficient proof such that a jury could find the defendant committed the extrinsic act. *Miller*, 959 F.2d at 1538. The Eleventh Circuit has found that a witness who provides detailed and specific testimony on direct and cross examination, and who relates incidents he or she observed and conversations he or she had with a defendant—while admitting to gaps in his or her knowledge—can provide a basis on which a jury can conclude a defendant committed extrinsic acts. *Bowe*, 221 F.3d at 1192.

The Court finds there is sufficient proof that Defendant committed the extrinsic act based on the Government's representation on what J.G. is expected to testify. That testimony, together with the March 11, 2019 email, Defendant's letter to his corporate counsel, the letter to the U.S. Embassy in Mexico, and the DHS Form G-28, form an adequate basis for the jury to find Defendant misused J.G.'s means of identification in the visa application materials, provided J.G.'s testimony adequately details its relevance to Defendant's statement of mind and J.G.'s personal

knowledge. To the extent Defendant argues J.G.'s testimony cannot prove intent by a preponderance of the evidence because J.G. did not see Defendant or another at Defendant's direction forging his signature, that argument is without merit. *See Bowe*, 221 F.3d at 1192 (rejecting defendant's argument that witness's acknowledgement that she did not actually see defendant bribe government officials during many of the incidents she described did not make her testimony erroneous and unfounded).

### C. Probative Value Versus Unfair Prejudice

The Court next considers the third prong—whether the probative value of the alleged extrinsic conduct is substantially outweighed by a danger of unfair prejudice. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013) (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) and *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). Accordingly, the Court must make "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *See United States v. Boston*, 249 F. App'x 807, 808 (11th Cir. 2007) (quoting *United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006) (citation and quotation marks omitted)). The Court considers each of these considerations in turn.

### i.   Government's Need for the Evidence to Prove Intent

As discussed, the Government has explained that it needs such evidence to prove intent because Defendant's not guilty plea puts his intent at issue. Moreover, to the extent Defendant seeks to show that the falsehoods in the at-issue PPP Loans and EIDLs were the result of staff oversights, the Government would need the evidence to counter such a defense, and the evidence

concerning the visa application materials would be highly probative of Defendant's intent. *See United States v. Williams*, No. 21-CR-20137, 2021 WL 3883700, at *5 (S.D. Fla. Aug. 31, 2021) (finding that evidence of other crimes was highly probative to counter defendant's "mere presence" defense). Accordingly, the Court finds the Government has shown a need to prove intent with extrinsic acts.

### ii.   Factual Dissimilarity

"The probative value of the extrinsic offense correlates positively with its likeness to the offense charged." *United States v. Cardenas*, 895 F.2d 1338, 1344 (11th Cir. 1990) (citation and alteration omitted). Here, the Defendant's state of mind with respect to the submission of the visa application materials is the same as the state of mind required to prove the charged offenses. To the extent Defendant seeks to frame the loan applications and EIDLs as the product of staff oversights, the visa application materials would be highly probative of Defendant's intent. *Williams*, 2021 WL 3883700, at *5. Moreover, both the submission of the visa application materials and the conduct underlying the charged offenses involve the use of the identification of individuals without their consent.

Defendant reasons that the submission of the visa application materials is not similar to the charged offenses because the former is not a scheme to steal money. ECF No. [113] at 6. However, the Court does not view the extrinsic conduct so narrowly; the submission of the visa application materials and the loan and EIDL applications both involve identity theft to obtain a government benefit—a visa in the former case and monetary compensation in the latter case.[6]

---

[6] Defendant takes a similar tact by reading narrowly the Government's allegation that Defendant forged J.G.'s signature on the engagement letter agreement with HM Management. Defendant argues the allegedly forged engagement letter is irrelevant in this case because those allegations concern purported fraud on a law firm, not a government agency like DHS. ECF No. [118] at 7-8. However, to the extent Defendant committed fraud by causing the DHS Form G-28 to be submitted with fraudulent information, that would

Defendant relies on *United States v. Liuzzo*, 608 F. Supp 1234 (S.D. Fla. 1985), to argue that the extrinsic conduct and the charged conduct here are factually dissimilar, but that reliance is misplaced. In *Liuzzo*, the Court determined that the defendant's extrinsic act of taking bribes was "hardly" similar to the defendant's alleged attempt to influence a grand jury witness so as to make admissible evidence of the bribe taking. *Id.* The Government argued that the extrinsic act in that case was probative of the defendant's intent to obstruct justice by influencing a grand jury witness, but the court found that the extrinsic act showed merely a tangential intent to obstruct justice. *Id.* The court expressed concern that virtually every crime would be an instance of "obstruction of justice" under the Government's logic. *Id.* Here, by contrast, both the extrinsic and charged conduct involve the knowing use of the means of identification of another person without lawful authority; because not all crimes involve such use, it does not follow that the use of the 404(b) evidence in this case would make virtually every past criminal offense an instance of aggravated identity theft under Rule 404(b).

Nor does *United States v. Backer*, No. 08-20200-CR, 2008 WL 2439741 (S.D. Fla. June 13, 2008), support Defendant's argument. In that case, the Government charged the defendant with assaulting an adult passenger while aboard a flight by touching the passenger's arm and upper leg. *United States v. Backer*, No. 08-20200-CR, 2008 WL 2439741, at *1 (S.D. Fla. June 13, 2008). The defendant sought to exclude evidence concerning a prior incident which took place at a California amusement park and led to the defendant's arrest for lewd and lascivious acts upon a minor: the defendant allegedly repeatedly touched a 14-year old's breasts and moved his hands down her waist. *Id.* at *2. The defendant was later acquitted of the incident in the California

---

have depended on having the law firm submit that form. As such, the allegations transitively involve fraud upon the Government.

amusement park. *Id.* at *1. The court correctly excluded evidence of the prior incident at trial. *Id.* at *2. Lewd and lascivious acts upon a minor are inflammatory and can distract a jury unless a defendant is charged with engaging in such acts. Based on the Government's representations, forging a person's name and signature on visa application materials is neither inflammatory nor distracting in the manner as the extrinsic conduct in *Backer*.

### iii.  Temporal Proximity

The Government argues the extrinsic act is close in time to the events of this case. ECF No. [116] at 9. Defendant does not dispute the Government on this point. J.G.'s testimony would be based on Defendant's alleged conduct in 2018, and the Superseding Indictment charges Defendant with aggravated identity theft based on events occurring from November 2020 through March 2021. ECF No. [60] at 8. The Court finds the temporal proximity of the submission of the visa application materials is not too remote given that both the extrinsic and charged acts occurred within three years.

### iv.  Limiting Instruction

The Court has explained how the proffered evidence is relevant to Defendant's intent in this case. It is also relevant to Defendant's character, evidence of which is not admissible. Fed. R. Evid. 404(b)(1). However, an appropriate limiting instruction would cure the unfair prejudice that may result from its admission. *See United States v. Borja-Antunes*, 530 F. App'x 882, 886 (11th Cir. 2013) (finding that the court's limiting instruction reduced the risk of undue prejudice in admitting evidence of prior conviction); *Calderon*, 127 F.3d at 1333 (same); *Diaz-Lizaraza*, 981 F.2d at 1225 (same); *Edouard*, 485 F.3d at 1346 (same). Defendant does not dispute that a limiting instruction on the visa application evidence would be curative, and the Court ultimately is persuaded the evidence is not unduly prejudicial. *See* Fed. R. Evid. 403 ("The court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury[.]").[7]

## D. Request for a Hearing

Because the Court decides the Motion based on the paper submissions, it concludes that an evidentiary hearing is not warranted. Defendant states that the Government's representations in the Notice and its briefing are "plain wrong." ECF No. [113] at 10. However, that assertion is based on "information and belief." *Id.* That basis is insufficient to support the conclusion that a hearing is required as Rule 404(b)(3) demands a notice by the Government, not an evidentiary hearing before the Court.

Because the Court denies Defendant's request for an evidentiary hearing, the Court will not hear J.G.'s testimony until trial. However, that circumstance is generally the case with motions *in limine* because "the better practice [is] to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there." *United States v. Laurent*, 603 F. Supp. 3d 1247, 1251 (S.D. Fla. 2022) (quoting *Mowbray v. Carnival Corp.*, No. 08-20937-CIV, 2009 WL 10667070, at *2 (S.D. Fla. April 13, 2009)). Accordingly, to the extent the Government fails to set forth a foundation for J.G.'s testimony, Defendant may object to the testimony on that basis. *See id.* ("If evidence is not clearly inadmissible, evidentiary rulings must be deferred until

---

[7] Defendant also argues that some of the evidence that the Government seeks to introduce, namely Defendant's letter to HM Management's attorney at a law firm which HM Management used for multiple representations, is "facially privileged[.]" ECF No. [113] at 2 n.2. To claim attorney-client privilege, the proponent of the privilege must prove that what is sought to be protected is a communication made between privileged persons in confidence for the purpose of obtaining or providing legal assistance for the client. *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021) (citing *In re Grand Jury Matter*, No. 91-01386, 969 F.2d 995, 997 (11th Cir. 1992)). Defendant makes no attempt to show that the attorney-client privilege attaches to Defendant's letter to the attorney. The Court thus rejects that argument.

trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." (quoting

*Mowbray*, 2009 WL 10667070, at *6)).[8]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Response to Notice of Rule

404(b) Evidence, Motion in Limine and Request for Evidentiary Hearing, **ECF No. [113]**, is

**DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 9, 2023.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

---

[8] Since the Court decides the Motion on Rule 404(b) grounds, it does not reach the Government's alternative argument that the evidence it seeks to admit is admissible on Rule 403 grounds.