**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-cr-20290-BLOOM**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC DEAN SHEPPARD,

    Defendant(s).

_____/

**OMNIBUS ORDER ON DEFENDANT'S RENEWED MOTION FOR BOND PENDING APPEAL AND MOTION FOR 5 MINUTE CONFERENCE**

**THIS CAUSE** is before the Court upon two separate motions: (1) Defendant Eric Dean Sheppard's ("Defendant") Renewed Motion for Bond Pending Appeal, ECF No. [273], filed on June 28, 2024; the Government filed a Response in Opposition, ECF No. [277], to which Defendant filed a Reply, ECF No. [280]; and (2) Defendant's Motion for a 5-Minute Status Conference Before August 23, 2024, ECF No. [286], filed on August 13, 2024. The Court has reviewed the motions, the record in this case, the applicable law, and is otherwise duly advised. For the reasons that follow, Defendant's Renewed Motion for Bond Pending Appeal, ECF No. [273], and Defendant's Motion for a 5-Minute Status Conference Before August 23, 2024, ECF No. [286], are denied.

    **I.    BACKGROUND**

On August 23, 2023, the Government filed a Superseding Indictment charging Defendant with nine counts of Wire Fraud (18 U.S.C. § 1343) and five counts of Aggravated Identity Theft (18 U.S.C. § 1028A). ECF No. [60]. In the Superseding Indictment, the Government alleged that Defendant engaged in a scheme and artifice to defraud the Small Business Administration (SBA),

which administers the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan (EIDL) Program, as well as lenders administering the PPP loan program. *See id.* at 5. The Superseding Indictment charged Defendant with submitting false and fraudulent Payment Protection Program ("PPP") and EIDL loan applications on behalf of three entities: HM-UP Development Alafaya Trails, LLC ("Alafaya Trails"), HM Management and Development, LLC ("HMMD"), and HM Four, LLC.

Defendant proceeded to a jury trial on all fourteen counts, ECF No. [189]. On January 16, 2024, the Jury returned a verdict of guilty on six counts of the Superseding Indictment (Counts 5, 7, 8, 9, 13, and 14): four counts of Wire Fraud (Counts 5, 7, 8, 9) and two counts of Aggravated Identity Theft (Counts 13 and 14). The Jury returned a verdict of not guilty on eight counts (Counts 1, 2, 3, 4, 6, 10, 11, and 12). On June 3, 2024, the Court acquitted Defendant of Counts 13 and 14. ECF No. [251].

The conduct underlying Counts 5, 7, 8 and 9 for Wire Fraud is as follows:

- Count 5: For the February 11, 2021 incident involving the electronic submission of false and fraudulent IRS Form 941s (Employer's Quarterly Tax Return) in support of Alafaya Trails' PPP second draw loan application, from the Southern District of Florida to Bank Processor 1. ECF No. [189] at 7.

- Count 7: For the March 11, 2021 incident involving the electronic submission of a false and fraudulent PPP second draw loan application on behalf of Alafaya Trails, from the Southern District of Florida to Bank Processor 2, resulting in a PPP loan of approximately $148,397.00. ECF No. [189] at 7.

- Count 8: For the March 11, 2021 incident involving the electronic submission of false and fraudulent IRS Form 1065 (U.S. Return of Partnership Income) in support of Alafaya Trails' PPP second draw loan application, from the Southern District of Florida

- to Bank Processor 2. ECF No. [189] at 7.

- Count 9: For the March 12, 2021 incident involving the electronic submission of a false and fraudulent PPP loan application, IRS Form 1065 (U.S. Return of Partnership Income), and IRS Form 1067 (U.S. Return of Partnership Income), and IRS Form 940 (Employer's Annual Federal Unemployment Tax Return) on behalf of HMDD, from the Southern District of Florida to Bank 3, resulting in a PPP loan of approximately $148,591.00. ECF No. [189] at 7.

On June 7, 2024, this Court sentenced Defendant to 18 months as to each of Counts 5, 7, 8, and 9, to be served concurrently with each other, ECF No. [283] at 144. At the sentencing hearing, the Court found that the intended loss of Defendant's fraud was $443,575.00, which enhanced the offense level calculation by twelve points under United States Sentencing Guidelines § 2B1.1. U.S. Sent'g Comm'n, Guidelines Manual, § 2B1.1 (Nov. 2023).

The Court used three loans to calculate the intended loss: (1) the April 15, 2020 PPP loan to HM Management and Development from Paypal/WebBank, which was since forgiven, where Defendant requested $146,587.00 and received $146,457.00 ("the $146,587.00 loan"), which was not tied to a specific count: (2) the March 11, 2021 PPP loan to Alafaya Trails from ACAP SME/Northeast Bank of a value of $148,397.00, underlying Count 7 ("the $148,397.00 loan"); (3) the March 12, 2021 PPP loan to HM Management and Development, LLC, from Cross River Bank of a value of $148,591.00, underlying Count 9 ("the $148,591.00 loan"). ECF No. [283] at 49-50; *see also* Government Exhibit 72.

## II.  LEGAL STANDARD

### A.  Motion for Reconsideration

"[N]o statute or Federal Rule of Criminal Procedure authorizes the filing of a motion for reconsideration in a criminal case." *United States v. Vives,* 546 F. App'x 902, 905 (11th Cir. 2013).

3

Yet, the Eleventh Circuit has permitted the filing of motions for reconsideration in criminal cases. *See United States v. Phillips*, 597 F.3d 1190, 1199-1200 (11th Cir. 2010). "In adjudicating motions for reconsideration in criminal cases, district courts have relied on the standards applicable to motions for reconsideration filed in civil cases pursuant to Rule 59, Federal Rules of Civil Procedure." *United States v. Brown*, No. 3:18-CR-89-J-34JRK, 2019 WL 7067091, at *1 (M.D. Fla. Dec. 23, 2019) (listing cases). "The only grounds for granting a Rule 59 motion are newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations and citations omitted). A motion for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior" to the Court's ruling. *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

### III. DISCUSSION

#### A. Renewed Motion for Bond Pending Appeal

Defendant styles his motion as a "Renewed Motion for Bond Pending Appeal[,]" ECF No. [273]. However, Defendant seeks reconsideration of issues the Court previously addressed at the sentencing hearing, ECF No. [283], and in its prior Omnibus Order, ECF No. [251]. Accordingly, the Court applies the standard for a motion for reconsideration to Defendant's Renewed Motion.

The Court previously denied Defendant's Motion for Release Pending Appeal, ECF No. [251], finding that "Defendant's argument for acquittal under Counts 5, 7, 8, and 9 for wire fraud is foreclosed by Eleventh Circuit precedent so it does not present a substantial question of law under 18 U.S.C. § 3143(b)(1)(B), as it is not a close question that could be decided the other way." *Id.* at 43. Defendant now raises two new arguments in support of release pending appeal: first, on June 17, 2024, the Supreme Court granted certiorari to decide whether fraudulent inducement is a valid theory of wire fraud, thus demonstrating that Defendant's arguments on appeal are

4

substantial. *See Kousisis v. United States*, No. 23-909, 2024 WL 3014475 (U.S. June 17, 2024); ECF No. [273] at 1-2. Defendant asserts that the appeal of his wire fraud convictions will present the same substantial question of law as in *Kousisis*: whether fraudulent inducement constitutes a valid theory of wire fraud, or as framed in the *Kousisis* petition, "[w]hether deception to induce a commercial exchange can constitute mail or wire fraud, even if inflicting economic harm on the alleged victim was not the object of the scheme." Pet. for Cert. at i, *Kousisis v. United States* (No. 23-909). ECF No. [273] at 4. Second, Defendant contends the Court erred in calculating "intended loss" when determining Defendant's Guidelines range for two PPP loans totaling approximately $300,000.00: Defendant always intended to pay back the two loans underlying Counts 7 and 9— and in fact did pay them back — so that the loans should not have been included in the Court's "intended loss" calculation. *Id.* at 2. Correcting for this error essentially halves Defendant's Guidelines range, from 24-30 months to 12-18 months so that Defendant's sentence on remand could be shorter than the "expected duration of the appeal process," 18 U.S.C. § 3143(b)(1)(B)(iv), warranting his release on bond pending appeal. *Id.* at 14-15.

The Government responds that neither issue presents a substantial question of law warranting reversal of the Court's prior decision to deny bond pending Defendant's appeal. ECF No. [277] at 1. First, the Government asserts that the Supreme Court's review of the *Kousisis* decision does not call into question the Eleventh Circuit's decision in *United States v. Watkins*, 42 F4th 1278 (11th Cir. 2022), or the many cases in which loan fraud have been prosecuted using the wire fraud statute. *Id.* at 2. Second, the Court determined the loss amount at sentencing based on the actual loss amount, not the intended loss. *Id.*

Defendant replies that the Court could not have been clearer that its ruling was with regard to intended loss. ECF No. [280] at 2. Further, nothing about the fraudulent inducement theory is limited to cases involving government contracting (as opposed to private contracting, like a loan

5

from a bank), nor is there anything unique about the government contracting context that would suggest the Supreme Court's decision next term will be limited. ECF No. [280] at 3.

### i. Substantial Question of Law

Sections 3143(b)(1) and (2) require this Court to release a defendant on bond pending appeal if four conditions are met:

(1) the defendant is not a flight risk or danger to the community;

(2) the appeal is not for the purpose of delay; and

(3) the appeal raises a substantial question of law or fact that

(4) is likely to result in reversal or a more favorable sentence.

*See* 18 U.S.C. § 3143(b).[1] A substantial question of law "is a 'close' question or one that very well could be decided the other way." *United States v. Giancola*, 754 F.2d 898, 901 (11th

---

[1] The text of the statute states as follows:

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
    (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
    (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
        (i) reversal,
        (ii) an order for a new trial,
        (iii) a sentence that does not include a term of imprisonment, or
        (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.
(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

18 U.S.C. § 3143(b).

Cir. 1985).

First, the Court notes that the grant of certiorari in *Kousisis* occurred after the Court issued its Order on Defendant's Motion for Release Pending Appeal, ECF No. [240], and could not have been raised previously. ECF No. [251]. *See Michael Linet, Inc.*, 408 F.3d at 763; *see also Kousisis v. United States*, No. 23-909, 2024 WL 3014475, at *1 (U.S. June 17, 2024). However, the grant of certiorari in *Kousisis* does not change the Court's prior determination that Defendant's appeal does not present a substantial issue of law warranting release on bond pending appeal.

In *United States v. Kousisis*, the Supreme Court granted certiorari to resolve a 6-5 circuit split on the fraudulent inducement theory of mail and wire fraud on three issues:

- Whether deception to induce a commercial exchange can constitute mail or wire fraud, even if inflicting economic harm on the alleged victim was not the object of the scheme.
- Whether a sovereign's statutory, regulatory, or policy interest is a property interest when compliance is a material term of payment for goods or services.
- Whether all contract rights are "property."

Pet. for Cert. at i, *Kousisis v. United States* (No. 23-909). Only the first question presented could possibly reach Defendant's conduct. Though that first question presented is broad, it strains credulity to believe that Defendant's conduct would be covered by the grant of certiorari in *Kousisis*, such that *Kousisis* makes the issue in this case a substantial question of law.

In *Kousisis*, the defendants misrepresented that they were subcontracting with a disadvantaged business enterprise, which was required to obtain a government contract. *See United States v. Kousisis*, 82 F.4th 230, 234-5 (3d Cir. 2023), *cert. granted*, No. 23-909, 2024 WL 3014475 (U.S. June 17, 2024). Due to this misrepresentation, the defendants obtained the contract and timely performed on it. However, the disadvantaged business enterprise was just passing along paint supplies to defendants but did not do any work or supply any materials on the project, contrary to defendants' representation. *Id.* at 235. After a jury trial, defendants were convicted, in

7

part, of wire fraud. On appeal, the defendants argued that they should be acquitted of the wire fraud counts, as the government was merely deprived of an "intangible interest" — the presence of a true disadvantaged business enterprise — and not of property under the wire fraud statute, 18 U.S.C. § 1343. *Id.* at 236. The Third Circuit disagreed, holding that defendants "set out to obtain millions of dollars that they would not have received but for their fraudulent misrepresentations." *Id.* at 240. The Third Circuit ruled that the object of the scheme was not the misrepresentation of the disadvantaged business enterprise participation, but the millions of dollars obtained from the government agencies, which was clearly property. *Id.* Further, the Third Circuit rejected the defendants' contention that the district court's jury instructions "were faulty because they did not "require[ ] the 'economic harm' that characterizes a property deprivation; [or the] proof that the scheme contemplated obtaining property of which the victim was deprived." *Id.* at 243. Instead, the Third Circuit found that the jury was properly instructed of the law that a government agency is "partially deprived of the benefit of its bargain when it paid the full contract price because of a false pretense[,]" which can sustain a wire fraud conviction. *Id.* at 243.

In *Kousisis*, there is a colorable argument that inflicting economic harm was not the object of defendants' scheme. Defendants performed high-quality work for a low price for government agencies, and can argue they did not seek to inflict an economic *harm* on the government agencies. Instead, they sought to mislead the government agencies to hire them, contractors that were not actually subcontracting with a disadvantaged business enterprise, instead of a contractor who was. However, here, the object of Defendant's scheme was economic harm on the banks or the SBA: to deprive banks (temporarily) or the SBA (if there was a default on the loans) of money. *Id.* at 236. A decision by the Supreme Court in *Kousisis*, a case where a contractor impeccably performed on a government contract but misrepresented its relationship with a disadvantaged business enterprise to obtain this contract, would have no impact on this loan fraud case.

Further, the Court has already rejected Defendant's argument that the applicability of *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), as revised (Oct. 3, 2016), opinion modified on denial of reh'g, 838 F.3d 1168 (11th Cir. 2016) and *United States v. Watkins*, 42 F.4th 1278, 1286–87 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1754 (2023), to the facts here raises a substantial issue of law. *See* ECF No. [251] at 42-43. A motion for reconsideration cannot be used "to relitigate old matters[,]" and the Court declines to reconsider that issue. *Michael Linet*, 408 F.3d at 763.

Accordingly, this Court does not find that the grant of certiorari in *Kousisis* warrants a reconsideration of the Court's Omnibus Order, ECF No. [251] at 42-43. Defendant should not be released on bond pending appeal as his appeal does not raise "a substantial question of law or fact" likely to result in reversal or a more favorable sentence. *See* 18 U.S.C. § 3143(b).

### ii. Intended Loss

At Defendant's sentencing hearing, the Court followed Sentencing Guideline § 2B1.1 and the accompanying Commentary to determine the loss amount, which is "the greater of the actual or intended loss." ECF No. [283] at 49; U.S. Sent'g Comm'n, Guidelines Manual, § 2B1.1, cmt. n.3(A) (Nov. 2023). Prior to Defendant's sentencing, Defendant paid back in full the two PPP loans for which he was convicted under Counts 7 ($148,397.00) and 9 ($148,591.00). The Court therefore turned to the intended loss of the fraud for its offense level calculation and found it "would appear to include as the intended loss the loan of 146,587.00, the loan of 148,397.00, and the loan of 148,591.00." ECF No. [283] at 49-50. This amounted to a loss of $ 443,575.00, which enhanced Defendant's offense level calculation by twelve points. *Id.* at 50.

Under Sentencing Guideline § 2B1.1, if the loss pursuant to Defendant's fraud exceeds $6,500.00, the Defendant is subject to an increase in the offense level. The offense level increases proportionately to the loss amount. According to the Commentary accompanying Sentencing

9

Guideline § 2B1.1, the "loss is the greater of actual loss or intended loss[:]"

> (i) Actual Loss.—"Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.
>
> (ii) Intended Loss.—"Intended loss" (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).
>
> (iii) Pecuniary Harm.—"Pecuniary harm" means harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm.
>
> (iv) Reasonably Foreseeable Pecuniary Harm.—For purposes of this guideline, "reasonably foreseeable pecuniary harm" means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense.

U.S.S.G. § 2B1.1, cmt. n.3(A).[2] Both parties agree the definitions in the Commentary are applicable to the Court's calculation of the Defendant's Guidelines.

Defendant does not dispute that the loan Defendant applied for on April 15, 2020, in which he requested $146,587.00 and obtained $146,457.00 for a PPP loan to PayPal/WebBank, counts toward Defendant's intended loss. Defendant did not pay that loan back. Instead, the loan was forgiven.

However, Defendant asks the Court to reconsider its ruling that the $148,397.00 and $148,591.00 loans count towards intended loss. Defendant argues that the intended loss must be calculated based on the Defendant's subjective intent. ECF No. [273] at 9. Defendant asserts that he intended no loss and testified at trial that he intended to pay the loans back, which means the two PPP loans, underlying the counts of conviction — totaling $296,988.00 — should not have

---

[2] A proposed amendment to Guideline 2B1.1 would move the definition of intended loss and actual loss from the Commentary to 2B1.1 to the guideline itself, effective November 1, 2024. *See* U.S. Sent'g Comm'n, 2023-2024 Proposed Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, Proposed Amendment: Rule for Calculating Loss, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20231221_rf-proposed.pdf at 3-4 (last accessed August 13, 2024).

been included in the Court's loss calculation. *Id.* at 12-14. Among others, Defendant cites a case by the Northern District Court of Georgia where the court found a defendant's intended loss was zero when the defendant "fraudulently obtained timber sales contracts that he nevertheless fully intended to perform and from which he intended that the loggers suffer no loss." *United States v. Syme*, No. CR 1:23-CV-00205-SDG, 2024 WL 1053295, at *5 (N.D. Ga. Mar. 11, 2024); ECF No. [273] at 9-10.

It is unclear why Defendant believes the Court did not calculate the intended loss based on Defendant's subjective intent at sentencing. Defendant asks the Court to recalculate the intended loss using Defendant's subjective intent, which the Court already did. In doing so, Defendant inappropriately asks the Court "to relitigate old matters" that were already determined at sentencing. *Michael Linet*, 408 F.3d at 763.

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Arthur*, 500 F.3d at 1343. Defendant argues that the Court "erred in calculating 'intended loss' when determining [Defendant's] guideline range." ECF No. [273] at 2. The Court construes this argument as Defendant stating that the Court committed a "manifest error[] of law or fact" in its calculation of intended loss. *Arthur,* 500 F.3d 1343 at 1343. The Court does not find that it committed such error. The Court agrees with Defendant that it must look to the subjective intent of Defendant to determine the intended loss. Calculating intended loss requires the Court to determine the pecuniary harm that "the defendant *purposely* sought to inflict[,]" a subjective inquiry. U.S.S.G. § 2B1.1, cmt. n.3(A)(ii)(I) (emphasis added). The Court applied that subjective inquiry and determined that Defendant intended to cause the loss of the loan amounts contained in Count 7 ($148,397.00) and Count 9 ($148,591.00). Both loan amounts are properly included in the Court's intended loss calculation.

Further, Defendant argues that if "the Court does not grant bond pending appeal,

11

Sheppard's ability to appeal this sentencing error will be destroyed." ECF No. [273] at 3. Because the Court does not believe it committed a sentencing error, it does not find that this is a ground to grant bond pending appeal.

Accordingly, Defendant's Renewed Motion for Bond Pending Appeal, ECF No. [273], is denied.

### B. Motion for a 5-Minute Status Conference Before August 23, 2024

Defendant seeks a 5-minute status conference as soon as possible before August 23, 2024, regarding Sheppard's Renewed Motion for Bond Pending Appeal or for an Extension of his Self-Surrender Date, ECF No. [286]. Because the Court has denied the Renewed Motion for Bond Pending Appeal, Defendant's Motion for a 5-Minute Status Conference is denied.

### CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Renewed Motion for Bond Pending Appeal, **ECF No. [273]**, is **DENIED**.

2. Defendant's Motion for a 5-Minute Status Conference Before August 23, 2024, **ECF No. [286]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida on August 16, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record